UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH G. ALBE | CIVIL ACTION |
| VERSUS | NO. 18-5389 |
| ROBERT A. LENTER, ET AL. | SECTION "R" (4) |

## ORDER AND REASONS

The Court has received a motion for summary judgment from plaintiff Joseph Albe.[1] Defendants have not opposed the motion.[2] Because there exist no genuine disputes of material fact as to plaintiff's claims, the Court grants the motion.

### I. BACKGROUND

This case arises from a dispute over the sharing of attorneys' fees.[3] Plaintiff Joseph Albe and defendant Robert Lenter, doing business as "Hurt on the Job?" and "Robert A. Lenter, Attorneys at Law, LLC,"[4] both ran law practices that specialized in workers' compensation cases.[5] When the two

---

[1] R. Doc. 57.
[2] *See* R. Doc. 65 at 1.
[3] *See, e.g.*, R. Doc. 3 at 2 ¶ 4.
[4] *See id.* at 2 ¶ 2.
[5] *See* R. Doc. 57-4 at 1 ¶ 3.

worked on cases together, they had a longstanding oral agreement whereby Lenter paid the litigation costs, and Albe provided most of the legal services.[6] The two would then split attorneys' fees equally between them.[7]

This fee-sharing agreement applied to the fees of the two cases at issue in this suit, the Debra McElveen case and the Michael Roux case.[8] The McElveen case generated $80,000 in fees,[9] and the Roux case generated $78,956.16.[10] Based on the parties' agreement, Albe was due half of both these amounts, or $79,478.08 in total.[11] Indeed, Lenter specifically told Albe that he owed him $40,000 for the McElveen case.[12] Instead of splitting these fees, though, Lenter kept them for himself.[13] To date, Lenter has paid Albe

---

[6] *See* R. Doc. 57-2 at 1 ¶ 2; *see also* R. Doc. 57-4 at 2 ¶ 4.
[7] *See* R. Doc. 57-2 at 1 ¶ 2; *see also* R. Doc. 57-11 at 1 ¶ 1.
[8] *See* R. Doc. 57-2 at 1 ¶ 2; *see also* R. Doc. 57-11 at 1 ¶ 1.
[9] *See* R. Doc. 57-11 at 1 ¶ 2; *see also, e.g.*, R. Doc. 57-6 at 1.
[10] Plaintiff reports this amount in some of the documents as $78,596.16. *See* R. Doc. 57-1 at 5; R. Doc. 57-2 at 2 ¶ 7; R. Doc. 57-11 at 1 ¶ 3. But the settlement order in the Roux case reveals that the correct amount is $78,956.16—that is, the same figure reported by plaintiff, but with the "5" and "9" transposed. *See* R. Doc. 57-7 at 27. Additionally, the amount calculated by plaintiff as the total fee he is due—$79,478.08, *see* R. Doc. 57-1 at 9; R. Doc. 57-11 at 1 ¶ 4—appears based on the figure in the settlement order.
[11] *See* R. Doc. 57-11 at 1 ¶ 4.
[12] *See* R. Doc. 57-2 at 2 ¶ 8.
[13] *See id.* at 2 ¶¶ 4-7; R. Doc. 57-11 at 1 ¶¶ 2-4.

only $5,000 as partial payment.[14] Albe therefore alleges that Lenter still owes him $74,478.08 in fees.[15]

Lenter kept these funds at a time when he was experiencing other financial difficulties. In 2018, the Louisiana Office of Disciplinary Counsel was "conducting an investigation into allegations that [Lenter] mishandled his clients' settlement funds, among other professional misconduct."[16] Indeed, Albe avers that Lenter used the fees at issue here "to pay past clients monies already owed to them from past settlements."[17] During the investigation, Lenter ultimately resigned from the practice of law, and was "permanently prohibited from practicing law in Louisiana or in any other jurisdiction in which he [wa]s admitted."[18]

In light of this background, Albe alleges not only that the ordeal has cost him financially but also that Lenter's conduct has "hurt [him] deeply and caused . . . emotional distress."[19] Before this incident, Albe and Lenter had worked together for roughly twenty years.[20] Indeed, Albe considered Lenter

---

[14] *See* R. Doc. 57-2 at 2 ¶ 9; R. Doc. 57-11 at 1 ¶ 5.
[15] *See* R. Doc. 57-1 at 9.
[16] *See* R. Doc. 57-5 at 4; R. Doc. 57-11 at 1 ¶ 6.
[17] *See* R. Doc. 57-2 at 2 ¶ 3; *see also* R. Doc. 57-3 at 2 ¶ 5.
[18] *See* R. Doc. 57-5 at 4; R. Doc. 57-11 at 1 ¶ 6.
[19] *See* R. Doc. 57-2 at 2 ¶ 10.
[20] *See id*. at 1 ¶ 2, 2 ¶ 10.

3

to be his "best friend."[21] The two frequently interacted in social settings, and Lenter often stayed with Albe when Lenter was in New Orleans.[22] Albe's family even called Lenter "Uncle Robert."[23] Given this background, "the betrayal of his friend and long-time business associate" has caused Albe to "suffer[] mental anguish."[24] Albe has provided affidavits from colleagues attesting to this "deep hurt."[25]

Lenter's conduct also has not contributed to the speedy resolution of this case, as the Court previously noted.[26] Early in the litigation, default was entered, as defendants had not filed responsive pleadings or entered an appearance.[27] Lenter has failed to appear for a deposition—requiring plaintiff to file multiple motions to compel his attendance[28]—and has failed to attend court proceedings.[29] Despite the Court's warning that "continued contravention of this Court's orders could result in the imposition of the appropriate sanctions, including entry of a default judgment,"[30] Lenter has

---

[21]  *See id.* at 2 ¶ 10.
[22]  *See* R. Doc. 57-3 at 2 ¶ 6.
[23]  *See id.*; R. Doc. 57-4 at 4 ¶ 10.
[24]  *See* R. Doc. 57-11 at 1 ¶ 7.
[25]  *See* R. Doc. 57-3 at 1 ¶ 2, 2 ¶ 7; *see also* R. Doc. 57-4 at 1 ¶ 2, 4 ¶ 10.
[26]  *See* R. Doc. 61 at 2-4.
[27]  *See* R. Doc. 11.
[28]  *See* R. Doc. 28; R. Doc. 37.
[29]  *See, e.g.*, R. Doc. 59 at 1.
[30]  R. Doc. 61 at 4.

4

not abided by the Court's recent order requiring Lenter to attend a deposition and to file a response to plaintiff's motion for summary judgment.[31]

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute

---

[31] *See* R. Doc. 61 at 2; R. Doc. 65 at 1.

of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the

pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322 (emphasis added))).

## III. DISCUSSION

Plaintiff presents three claims: breach of contract, detrimental reliance, and conversion of funds.[32] The Court considers each in turn.

### A. Breach of Contract

Plaintiff claims that defendants' failure to split attorneys' fees in the McElveen and Roux cases constituted a breach of contract.[33] The Court grants summary judgment on this claim.

Under Louisiana law,[34] "a contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ.

---

[32] *See* R. Doc. 57-1 at 1; *see also* R. Doc. 3 at 4 ¶ 12; R. Doc. 19 at 9-10.
[33] *See generally* R. Doc. 3; *see also* R. Doc. 57-1 at 6.
[34] Because plaintiff brings this case under the Court's diversity jurisdiction, *see* R. Doc. 3 at 1, the Court applies Louisiana law, *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Code art. 1906. Plaintiff provides summary judgment evidence that he had an oral agreement with defendant Lenter to split attorneys' fees equally when they worked together on a case.[35] Plaintiff likewise presents summary judgment evidence that this agreement applied to the McElveen and Roux cases.[36]

Because the agreement is worth $500 but is not in writing, "the contract must be proved by at least one witness and other corroborating circumstances." La. Civ. Code art. 1846; *see also Peter Vicari Gen. Contractor, Inc. v. St. Pierre*, 831 So. 2d 296, 301 (La. App. 5 Cir. 2002). To meet this requirement, "a party may serve as his own witness." *Pennington Const., Inc. v. R A Eagle Corp.*, 652 So. 2d 637, 639 (La. App. 1 Cir. 1995). But the "corroborating circumstances that are required must come from a source other than the plaintiff." *Id.* That said, these corroborating circumstances "may be general and need not prove every detail of the plaintiff's case." *Id.*

Here, plaintiff serves as his own witness, by presenting an affidavit attesting to this oral agreement.[37] He corroborates the existence of this agreement with affidavits from two other witnesses, colleagues who both

---

[35] *See* R. Doc. 57-2 at 1 ¶ 2.
[36] *See id.*
[37] *See* R. Doc. 57-2 at 2 ¶ 2.

attest that plaintiff and defendant had agreed to split fees equally.[38] Plaintiff and the witnesses also state that this agreement was in place for the McElveen and Roux cases.[39] For good measure, plaintiff also provides a statement from defendant Lenter himself that corroborates the existence of a contract. Specifically, plaintiff testifies that "[i]n a phone conversation with [plaintiff] in 2018, Mr. Lenter admitted to owing [plaintiff] $40,000 in fees from the McElveen case."[40] Therefore, plaintiff has sufficiently established the existence of an oral contract.

Finally, plaintiff presents summary judgment evidence that defendant breached this agreement. The McElveen case generated $80,000 in fees,[41] and the Roux case generated $78,956.16.[42] Plaintiff therefore should have received $79,478.08 under the parties' agreement.[43] But defendant paid plaintiff only $5,000 for these two cases.[44] Consequently, the Court grants summary judgment in favor of plaintiff on this claim.

---

[38] *See* R. Doc. 57-3 at 1 ¶ 2; R. Doc. 57-4 at 1 ¶ 2, 2 ¶ 4.
[39] *See* R. Doc. 57-2 at 1 ¶ 2; R. Doc. 57-3 at 1-2 ¶¶ 3-4; R. Doc. 57-4 at 2 ¶ 5.
[40] *See* R. Doc. 57-2 at 2 ¶ 8. The Court notes that although hearsay does not present permissible summary judgment evidence, *see Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995), an opposing party's statement is not hearsay, *see* Fed. R. Evid. 801(d)(2).
[41] *See* R. Doc. 57-2 at 2 ¶ 4; *see also, e.g.*, R. Doc. 57-6 at 1.
[42] *See* R. Doc. 57-7 at 27.
[43] *See* R. Doc. 57-2 at 2 ¶ 10; R. Doc. 57-11 at 1 ¶ 4.
[44] *See* R. Doc. 57-2 at 2 ¶ 9; R. Doc. 57-11 at 1 ¶ 5.

The Court finds that damages for this breach of contract claim amount to $79,478.08 minus defendant's payment of $5,000 to plaintiff, for a sum of $74,478.08. The Court also finds an award of costs appropriate. *See* Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party.").

### B. Detrimental Reliance

In the alternative, plaintiff presents a claim of detrimental reliance, based on the same facts.[45] Under Louisiana law, "an action in detrimental reliance sounds in contract." *Stokes v. Ga.-Pac. Corp.*, 894 F.2d 764, 770 (5th Cir. 1990). Indeed, the provision for detrimental reliance appears in the "Conventional Obligations or Contracts" section of the Louisiana code. *See* La. Civ. Code art. 1967. Here, the Court has already granted plaintiff's claim for breach of contract and provided plaintiff with a contract remedy. Consequently, addressing the issue of detrimental reliance would be superfluous. The Court therefore does not reach plaintiff's alternative claim of detrimental reliance.

---

45   *See* R. Doc. 3 at 4 ¶ 12; R. Doc. 57-1 at 7.

## C. Conversion of Funds

Plaintiff finally claims that defendants' retention of plaintiff's attorney's fees constitutes a conversion.[46] The Court grants summary judgment on this claim.

To prevail on a conversion claim under Louisiana law, plaintiff need only prove that (1) he owned or had the right to possess funds that were misused; (2) this misuse was "inconsistent" with plaintiff's rights; and (3) the misuse was a "wrongful taking." *See Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 484 (5th Cir. 1986); *see also Aymond v. State, Dep't of Revenue & Taxation*, 672 So. 2d 273, 275 (La. App. 1 Cir. 1996) ("Conversion is . . . an act in derogation of the plaintiff's possessory rights." (citing, among others, *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So. 2d 756, 760 (La. 1985))).[47] Plaintiff provides summary judgment evidence establishing these elements.

---

[46] *See* R. Doc. 3 at 4 ¶ 12; R. Doc. 57-1 at 8-9.

[47] The Court's finding that defendants breached a contract with plaintiff does not preclude a finding of conversion. *See Walker v. Universal Bus. Ass'n*, 482 So. 2d 992, 996 (La. App. 3 Cir. 1986) ("[R]ecovery may be allowed under both the theory of breach of contract and tort."). In *Albritton v. McDonald*, 363 So. 2d 925 (La. App. 2 Cir. 1978), for instance, the Louisiana Second Circuit Court of Appeal found that "[r]ecovery could be allowed under either or both, the theory of tort and the theory of redhibition, upon allegations and proof of sufficient facts," *see id.* at 927 (citations omitted), where "redhibition" under Louisiana law is an "inherently

11

As already discussed above, plaintiff has presented evidence indicating that he had an agreement to split fees equally with defendant Lenter, and thus had a right to the funds at issue.[48] He also has presented evidence that Lenter misused these funds by refusing to relinquish them to plaintiff,[49] which proved inconsistent with plaintiff's right to the fees. Indeed, defendant admitted that he owed plaintiff $40,000 for the McElveen case, which has not been paid.[50] Finally, Lenter's retention of these funds was not otherwise authorized by law—indeed, the evidence suggests that Lenter used the money owed to plaintiff in order to pay off other debts[51]—and thus the Court finds that he wrongfully took the funds. Consequently, the Court grants summary judgment in favor of plaintiff on this claim.

Under Louisiana law, "[t]he measure of damages for wrongful conversion is the return of the property." *Fenner v. Schley*, 246 So. 3d 770, 773 (La. App. 2 Cir. 2018) (citing, among others, *Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So. 2d 853 (La. 1998)). That said, "[g]eneral damages may also be awarded when appropriate." *Id.* (citing *Quealy*, 475 So. 2d 756).

---

contract-based" action that "arises out of the contract of sale," *Datamatic, Inc. v. Int'l Bus. Machs. Corp.*, 795 F.2d 458, 461-62 (5th Cir. 1986).
[48]     *See* R. Doc. 57-2 at 1 ¶ 2; R. Doc. 57-11 at 1 ¶ 1.
[49]     *See* R. Doc. 57-2 at 2 ¶¶ 5, 7, 9; R. Doc. 57-11 at 1 ¶ 4.
[50]     *See* R. Doc. 57-2 at 2 ¶ 8.
[51]     *See id.* at 2 ¶ 3.

"General damages are those which may not be fixed with pecuniary exactitude; instead, they 'involve mental or physical pain or suffering . . . .'" *Duncan v. Kan. City S. Ry. Co.*, 773 So. 2d 670, 682 (La. 2000) (quoting *Keeth v. Dep't of Pub. Safety & Transp.*, 618 So. 2d 1154, 1160 (La. App. 2 Cir. 1993)). When assessing general damages, "[v]ast discretion is accorded the trier of fact." *Id.*; *see also* La. Civ. Code art. 2324.1. And of particular note here, "[t]he trial court is awarded great discretion in awarding general damages for mental anguish caused by tortious conversion." *Jackson v. Brumfield*, 442 So. 2d 518, 521 (La. App. 1 Cir. 1983).

The Court finds that in addition to an award of the fees owed to plaintiff, an award of general damages is appropriate. Plaintiff has adduced evidence substantiating the mental suffering he experienced as a consequence of Lenter's conversion.[52] Specifically, before this incident, Albe and Lenter were close friends[53]—Albe's family even called Lenter "Uncle Robert."[54] Because of this relationship, Lenter's wrongful actions caused Albe to suffer a strong sense of betrayal and hurt.[55]

---

[52] *See* R. Doc. 57-2 at 2 ¶ 10; 57-3 at 2 ¶ 7; R. Doc. 57-4 at 4 ¶ 10.
[53] *See* R. Doc. 57-2 at 2 ¶ 10; R. Doc. 57-3 at 2 ¶ 6.
[54] *See* R. Doc. 57-3 at 2 ¶ 6; R. Doc. 57-4 at 4 ¶ 10.
[55] *See* R. Doc. 57-2 at 2 ¶ 10.

Furthermore, as plaintiff notes, Lenter's unaccommodating attitude toward this litigation, along with his dilatory tactics, have compounded this suffering.[56] And Lenter has benefited from retaining all but $5,000 of the contested funds during the pendency of the suit.[57] Given these circumstances, the Court finds an award of general damages in the amount of $10,000 appropriate.

### D. Waiver

Finally, the Court notes that independent of the merits of plaintiff's claim, defendants' failure to oppose the motion for summary judgment functions to waive their defenses. *See Savers Fed. Sav. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1501 (5th Cir. 1989) ("[E]ven a pleaded theory was waived when it was not raised in opposition to a motion for summary judgment."), *superseded by statute on other grounds*, Tex. Prop. Code § 51.003, *as recognized in First State Bank v. Keilman*, 851 S.W.2d 914, 932 (Tex. Ct. App. 1993); *see also O'Neal v. Cargill, Inc.*, 178 F. Supp. 3d 408, 416 (E.D. La. 2016) ("The Fifth Circuit has repeatedly held that a party's 'complete failure to raise any legal or factual issue regarding that claim in his Opposition [to a motion for summary judgment] constitutes a waiver of the

---

[56] *See* R. Doc. 57-1 at 9.
[57] *See id.*; R. Doc. 57-2 at 2 ¶ 9; R. Doc. 57-11 at 1 ¶ 5.

issue.'" (alteration in original) (quoting *Ledet v. Fleetwood Enters., Inc.*, 245 F.3d 791, 2000 WL 1910173, at *4 (5th Cir.2000) (per curiam) (table opinion))). Relatedly, by local rule "[a]ll material facts in the moving party's statement will be deemed admitted, for purposes of the motion, unless controverted in the opponent's statement." E.D. La. L.R. 56.2. Defendants' failure to oppose the motion for summary judgment, therefore, bolsters the Court's decision to grant summary judgment for plaintiff.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion for summary judgment. Specifically, the Court AWARDS plaintiff $74,478.08 on his breach of contract claim, and $10,000 in general damages on his conversion claim, for a total of $84,478.08. The Court also awards plaintiff costs, and therefore ORDERS plaintiff to file a motion within fourteen days from the date of this order to fix this amount.

New Orleans, Louisiana, this __18th__ day of February, 2020.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE